TERRY GODDARD
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JOSEPH L. PARKHURST
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS/CAPITAL LITIGATION SECTION
400 WEST CONGRESS, BLDG. S–315
TUCSON, ARIZONA 85701–1367
TELEPHONE: (520) 628–6520
(STATE BAR NUMBER 16692)
E-MAIL: CADOCKET@AZAG.GOV

ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth S. Machado | CIV 09–0425–TUC–FRZ (HCR) |
| Petitioner, | |
| -vs- | |
| Charles L. Ryan, et al., | ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS |
| Respondents. | |

Respondents, pursuant to Rules 5 and 11 of the Rules Governing § 2254 Cases, and this Court's order of August 5, 2009, hereby answer the Petition for Writ of Habeas Corpus. For the reasons set forth in the following Memorandum of Points and Authorities, Respondents respectfully request that the petition be denied and dismissed with prejudice.

DATED this 16th day of September, 2009.

RESPECTFULLY SUBMITTED,

TERRY GODDARD
ATTORNEY GENERAL

s/JOSEPH L. PARKHURST
ASSISTANT ATTORNEY GENERAL
ATTORNEYS FOR RESPONDENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

Petitioner Kenneth Machado seeks relief under 28 U.S.C. § 2254 from his state court convictions for sexual assault, interfering with judicial proceedings/domestic violence, and solicitation of murder.  (R.T. 9/10/04, at 14.)  He is currently serving a presumptive term of 7 years' imprisonment for sexual assault with a consecutive presumptive term of 3.5 years' imprisonment for solicitation of murder.  (R.T. 10/15/04, at 10.)

I.    FACTUAL BACKGROUND.

The victim of the sexual assault was Machado's estranged wife, Margaret.  Machado and Margaret had been married for approximately 9 years at the time of the sexual assault.  (R.T. 9/1/04, at 5.)  They had two small children at the time.  (*Id.*)  Margaret and Machado were both nurses.  (*Id.* at 7, 10.)  The couple had participated in marriage counseling offered through their church.  (*Id.* at 11.)

In early September of 2003, Margaret moved out of their residence and rented her own apartment.  (*Id.* at 12.)  As part of their separation agreement, Machado signed a written contract agreeing that he would not attempt to indulge in any physical contact with Margaret.  (*Id.* at 14–15.)

During their separation, the couple continued to go to counseling and continued to see each other for purposes of caring for and visiting with the children, but they did not have any sexual relations during the course of the separation.  (*Id.* at 11–13, 19.)  The two would exchange the children at each other's residences.  (*Id.* at 11–13, 17.)

On the night of December 13, 2003, Margaret went to Machado's house to study for an important nursing exam the following morning.  (R.T. 9/1/04, at 19–20.)  Margaret was very nervous about the test, so Machado, who had passed the test before, told her to come over and he would make dinner and help her study.  (*Id.* at 22.)  They had been separated for 3 months at that point.  (*Id.* at 12.)  Margaret was hesitant about going over to the house, but she decided she could

1  help put the children to bed after dinner and then study and return to her apartment.

2  (*Id*.)  Margaret planned to be in her apartment by 10:00 p.m.  (*Id*. at 27.)

3  During dinner, Margaret had two Seven-Up sodas, one of which Machado

4  prepared outside of her presence.  (R.T. 9/1/04, at 24.)  Following dinner, Margaret

5  helped get the children into bed.  (*Id*.)  Once the children were in bed, Machado

6  and Margaret sat at the kitchen table and began studying for the test.  (*Id*. at 25–

7  26.)  After about a half hour, Machado interrupted the studying to give Margaret a

8  little emerald ring and a letter.  (*Id*. at 26.)  Margaret "did not know what to say to

9  him" and tried "to redirect to studying because," she said, "that's why I came

10  there."  (*Id*.)  Machado then prepared an IV of dextrose and water for Margaret,

11  and he administered it to her to help give her "energy to study."  (*Id*. at 27.)

12  Moments later, Margaret began to feel sick and asked Machado to stop the IV.  (*Id*.

13  at 30.)  Immediately, Margaret became dizzy and passed out.  (*Id*.)

14  Margaret remembered waking up some time later in Machado's bedroom

15  and noticing that the IV was empty.  (R.T. 9/1/04, at 31–32.)  She asked Machado

16  why he had failed to stop the IV when she told him to, and he stated that he

17  guessed that he "forgot to clamp it off."  (*Id*. at 32.)  Thereafter, Margaret passed

18  out again and remembered nothing else until she awoke much later in the hospital

19  emergency room.  (*Id*. at 32.)  Margaret's blood alcohol content was .20 and she

20  had benzodiazepine (Valium) in her blood as well, and while the amount was not

21  quantifiable, the doctor concluded that Margaret had benzodiazepine poisoning.

22  (R.T. 9/2/04, at 98–100.)  When a nurse told Margaret that alcohol and drugs were

23  discovered in her system, Margaret had no explanation for how they got there.

24  (R.T. 9/1/04, at 35, 37.)  Margaret fell asleep again and woke up later in the ICU

25  where she learned that Appellant had told the staff that she "overdosed" and/or had

26  "tried to commit suicide."  (R.T. 9/1/04, at 38; R.T. 9/2/04, at 108, 129–30; R.T.

27  9/3/04, at 83, 109.)  However, Margaret denied ever knowingly ingesting any

28  alcohol or drugs that night.  (R.T. 9/1/04, at 38–39.)

1   When Margaret awoke in the ICU, she told the attending nurse that she
2   believed Machado was "trying to harm" her, so the nurse called the police. (R.T.
3   9/1/04, at 41, 49, 128, 139; R.T. 9/3/04, at 81, 86, 93; R.T. 9/3/04, Reporter
4   Andrew, at 7.)  A rape kit revealed the presence of Machado's semen on swabs
5   taken from Margaret's vagina and anal area.  (R.T. 9/1/04, at 42, 166–68.)
6   Margaret also had unexplained marks on her body including extra puncture holes
7   and bruising on her arm and a third degree burn on her left wrist. (R.T. 9/1/04, at
8   48, 50, 133–134; R.T. 09/03/04, at 85.)

9   The police went to Machado's residence.   (R.T. 9/1/04, at 146–47.)
10  Machado told the police that Margaret came over to the house for dinner and that
11  afterwards she went into the bedroom because she was not feeling well and she
12  asked Machado to make her a drink. (*Id*. at 149.)   Machado said he provided
13  Margaret with a drink and then one thing led to another and they had consensual
14  intercourse. (*Id*. at 150.)   He then left the room, and when he returned to check on
15  Margaret the door was locked and had to be forcibly opened.  (*Id*. at 151.)
16  Machado said he found Margaret "unconscious and blue" and started CPR and
17  called 911.  (*Id*.)  When police specifically questioned Machado about an IV being
18  used, Machado hesitated and then admitted that "there was an IV involved" but
19  that he had not mentioned it since he and Margaret were nurses and "could lose
20  their license." (*Id*. at 152.)

21  **II.      PROCEDURAL FACTS.**

22  On February 17, 2004, The State of Arizona indicted Machado on five
23  counts including the charge of sexual assault of Margaret pursuant to A.R.S. § 13–
24  1406.    (Respondents' Exhibit A.)   During the settling of jury instructions, he
25  requested an instruction based on the version of § 13–1407(D) in effect at the time
26
27
28

of the offense.[1]   His requested instruction read:   "It is a defense to a prosecution pursuant to Section 13–1404, 13–1405 or 13–1406 that the person was the spouse of the other person at the time of commission of the act."   (Respondent's Exhibit D, # 12.)   He also requested definitions of "spouse" and "cohabitation." (Respondent's Exhibit D, # 13.)   Both parties agreed that Machado and his wife were married at the time of the offense.   (R.T. 9/8/04, at 159–74.)   The State argued that because Machado and Margaret did not live in the same residence, they were not cohabiting, and thus, Machado did not meet the definition of "spouse" in § 13–1401(4), "a person who is legally married and cohabiting."   (*Id.*)   Machado countered that whether two people are cohabiting is based on many factors other than just living together; therefore, this issue was a question of fact for the jury. (*Id.*)   Without making any express findings, the trial court denied Machado's requested instruction.

On September 10, 2004, a Pima County jury found Machado guilty of sexual assault, interfering with judicial proceedings/domestic violence, and solicitation of murder.   (R.T. 9/10/04, at 14.)   The trial court had already directed a verdict of acquittal on one count of administering liquor or drugs (R.T. 9/7/04, at 38), and the jury acquitted Machado of attempted first degree murder.   (R.T. 9/10/04, at 14.)

After sentencing, Machado filed a timely notice of appeal from the judgment and sentence.   In his Opening Brief in Division Two of the Arizona Court of Appeals, Appellant raised four issues, including:

> 1. The trial court reversibly and/or fundamentally erred in denying Mr. Machado's request for a jury instruction on the spouse defense to sexual assault, and/or the definition of "spouse" and/or "cohabitation," thus denying Mr. Machado his constitutional right to present a defense, his right to a jury, his right to due process to a fair trial and to have the

_____

[1] A.R.S. § 13–1407(D) has since been amended, essentially repealing the spousal defense to a charge of sexual assault.  2005 Ariz. Sess. Laws, ch. 185, § 4.

**1**   elements proven beyond a reasonable doubt.

**2**   2. The State's repeated characterization of its burden of proof as "firmly
**3**   convinced," was fundamental error, the prejudice of which was
        compounded by the reasonable doubt jury instruction based on *State v.*
**4**   *Portillo* [898 P.2d 970 (Ariz. 1995)].

**5**   (Petitioner's Exihibit A, part 1, Opening Brief.)

**6**        In an opinion issued May 10, 2006, the Arizona Court of Appeals held:

**7**   "Because no evidence reasonably supported a finding that Machado and his wife

**8**   were cohabiting, Machado was not entitled to the spousal defense instruction.

**9**   Therefore, the trial court did not abuse its discretion in refusing to give one." *State*

**10**  *v. Machado*, 138 P.3d 742, 746, ¶ 14 (depublished, 138 P.3d 742) (Ariz. App. 2006)

**11**  (Petitioner's Exhibit B).   Noting that the word "cohabiting" is not explicitly

**12**  defined in Arizona's criminal code, the Court of Appeals determined that "the

**13**  common meaning of the term 'cohabit' is a couple who is living together and

**14**  behaving as married partners."  (Petitioner's Exhibit B, at ¶ 12 (citing definitions

**15**  found in Webster's New Collegiate Dictionary (1980), The American Heritage

**16**  Dictionary (2d college ed. 1991), and Black's Law Dictionary (8th ed. 2004)).   The

**17**  Court of Appeals cited several facts which argued against cohabitation in this case:

**18**  Margaret had moved out of the family residence and into a separate apartment

**19**  three months before Machado assaulted her; she testified she had not engaged in

**20**  any sexual activity with Machado since she had moved out; and she further

**21**  testified that the couple had drafted a separation agreement in which Machado had

**22**  agreed not to ask for or attempt to have any physical contact with her.  (Petitioner's

**23**  Exhibit B, at ¶ 14.)   Despite evidence of an ongoing non-sexual relationship

**24**  between the separated spouses, the Court of Appeals concluded that no facts

**25**  "demonstrate[] that Machado and his wife were cohabiting in the normal sense of

**26**  the word." (*Id.*)

**27**       The state appellate court also found Machado's constitutional issues

**28**  forfeited for all but fundamental error.  (Petitioner's Exhibit B, at ¶ 15.)  To prevail

1   on fundamental error review, a defendant must show that error occurred, the error

2   deprived him of a fair trial, and the error prejudiced the defendant.   *State v.*

3   *Henderson*, 115 P.3d 601, 607, ¶ 19 (Ariz. 2005).   Having found the trial court did

4   not err by refusing to give the spousal defense instruction, the court found no

5   fundamental error; thus, it found Machado had forfeited his constitutional claims.

6   (Petitioner's Exhibit B, at ¶ 15.)

7   　　　The Court of Appeals also rejected Machado's challenge to the reasonable

8   doubt instruction.   The court held:   "[B]ecause Machado requested the court to give

9   the *Portillo* instruction, he invited any error in that instruction and is not entitled to

10   appellate review of that issue."   (Petitioner's Exhibit B, at ¶ 15, at ¶ 22; citing *State*

11   *v. Logan*, 30 P.3d 631, 632, ¶ 9 (2001).   Machado petitioned for review in the

12   Arizona Supreme Court, and on February 8, 2007, that court denied review without

13   comment.   (Petitioner's Exhibit C.)

14   　　　On March 28, 2007, Machado filed a notice of post-conviction relief (PCR)

15   pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.   Appointed

16   counsel filed a petition for PCR raising three issues, including two claims of

17   ineffective assistance of trial counsel: (1) after the trial court directed a verdict on

18   the administering liquor or drugs count, counsel was ineffective for failing to

19   request an instruction limiting the jury's consideration of evidence as to the rape

20   count that Machado had administered alcohol or drugs, and (2) counsel was

21   ineffective for failing to raise constitutional objections when the trial court refused

22   to give the spousal defense jury instruction.   (Petitioner's Exhibit D.)   The trial

23   court summarily denied the petition for PCR.   (*Id.*)   Machado petitioned for review.

24   The Arizona Court of Appeals granted review but denied relief, holding in

25   pertinent part that (1) counsel made a reasonable strategic decision not to argue

26   anything further about the administration of liquor or drugs charge, and (2) because

27   the trial court had not erred in refusing the spousal defense instruction, Machado

28   suffered no prejudice by counsel's failure to make constitutional objections to the

1    court's decision.  (Respondents' Exhibit B.)  Machado petitioned for review in the

2    Arizona Supreme Court, and that court denied review without comment.  The

3    mandate issued on March 6, 2009.

4    **III.   TIMELINESS UNDER AEDPA.**

5         Machado timely filed his § 2254 petition on July 29, 2009.  *See* 28 U.S.C. §

6    2244(d)(1)(A) and (d)(2).

7    **IV.   EXHAUSTION/PRECLUSION.**

8         Before a state prisoner advances his claim in a federal habeas petition, he

9    must exhaust the claim in the state courts "by invoking one complete round of the

10   State's established review process."  *O'Sullivan v. Boerckel*, 526 US. 838, 845

11   (1999).  State exhaustion requires a prisoner to "'fairly present' his claims in each

12   appropriate state court (including a state supreme court with powers of

13   discretionary review), thereby alerting that court to the federal nature of the claim."

14   *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Each ground for habeas corpus relief

15   raised in Machado's Petition for Writ of Habeas Corpus was previously presented

16   to the state court in his direct appeal or his petition for PCR, and again in his

17   petitions for review.

18   **V.   ARGUMENT.**

19        This Court is prohibited from issuing the writ of habeas corpus unless the

20   state court decision "was contrary to, or involved an unreasonable application of,

21   clearly established Federal law, as determined by the Supreme Court of the United

22   States."  28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A

23   state court decision is "contrary to" clearly established precedent if the state court

24   applies a rule that contradicts the governing law set forth by the Supreme Court or

25   if the state court arrives at a result different from Supreme Court precedent on

26   materially indistinguishable facts.  *Id.* at 405–06.  The "unreasonable application"

27   clause of § 2254(d)(1) requires the state court decision to be more than incorrect or

28   erroneous;  the state court's application of federal law must be "objectively

1    unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003), citing *Williams v.*
2    *Taylor*, 529 U.S. at 409–12.

3    **A. Ground One:  Ineffective Assistance of Counsel.**

4    In ground one of his Petition, Machado contends that his trial attorney
5    rendered ineffective assistance by failing to request an instruction from the trial
6    court telling the jurors' "not to consider the allegations that Mr. Machado
7    administered alcohol or drugs without his wife's knowledge . . . where there was
8    no other introduction of evidence that his spouse did not consent, as to the rape
9    charge."  (Pet. at 6.)

10   To show ineffective assistance of counsel, a defendant must show both that
11   his counsel's actions fell below an objective standard of reasonableness and that he
12   suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).
13   To show prejudice, "[t]he defendant must show that there is a reasonable
14   probability that, but for counsel's unprofessional errors, the result of the
15   proceeding would have been different."  *Id*. at 695.

16   Machado was originally charged with unlawfully administering liquor or
17   drugs to his wife (count two).  (Respondents' Exhibit A.)  After hearing argument
18   on Machado's motion for judgment of acquittal pursuant to Ariz. R. Crim. P. 20,
19   the trial court directed a verdict of acquittal on this charge.  (R.T. 9/7/04, at 38.)
20   Later, during the settlement of instructions, the prosecutor requested the court to
21   tell the jurors that they would be asked to consider only four counts instead of five.
22   (R.T. 9/8/04, at 177–79.)  Defense counsel objected, saying:  "I think they ought
23   not to be told anything because once you start, I mean, they kind of fuel the
24   speculation once you make a comment on it."  (R.T. 9/8/04, at 179.)  Accordingly,
25   the trial court did not comment to the jurors on the absence of the administering
26   drugs or liquor charge.  When Machado claimed ineffective assistance of counsel
27   in his petition for PCR for counsel's part in this decision, the trial court found:

28

Defense counsel was presented with a dilemma following his successful advocacy which resulted in the granting of the motion for directed verdict as to count [two].  He could request an instruction telling the jury to disregard the evidence related to that count, thus calling further attention to it. Or he could choose not to have such an instruction given. . . .  It is apparent from the record that Mr. Jones considered the issue carefully, and chose to not request the instruction.   . . . This is definitely trial strategy, not ineffective assistance.

(Petitioner's Exhibit D.)

Machado "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).   In this case, a disputed issue of fact was whether Margaret had consented to have sex with Machado.   Evidence that Margaret had somehow ingested alcohol and benzodiazepine was admitted to support the charge of unlawfully administering alcohol or drugs.   But because Margaret testified she had no memory of how she ingested the alcohol and benzodiazepine, the court directed a verdict on that count.   The suspicion that Machado had administered these substances to her was clearly damaging to his claim that the sex was consensual.   When the administering charge disappeared from the case, the cloud it cast upon the consent issue diminished.   While the prosecutor wanted to inform the jury of the dropped count, defense counsel saw the opportunity to let the issue pass without official comment, because any comment would only "fuel the speculation once you make a comment on it."  (R.T. 9/8/04, at 179.)

The Ninth Circuit has long recognized that defense counsel must be allowed a wide latitude with regard to tactical decisions. *See Torres-Chavez v. Holder*, 567 F.3d 1096, 1100–01 (9th Cir. 2009); *Campbell v. Kincheloe*, 829 F.2d 1453, 1464 (9th Cir. 1987).  Indeed, under *Strickland*, a criminal defendant's counsel may be deemed ineffective only if counsel's performance falls outside "the wide range of reasonable professional assistance."  466 U.S. at 689.  Thus, "scrutiny of counsel's

1 performance must be highly deferential," and "the defendant must overcome the

2 presumption that, under the circumstances, the challenged action might be

3 considered sound trial strategy." *Id*. (internal quotation marks omitted).  In

4 particular, courts must "evaluate the conduct from counsel's perspective at the

5 time," taking care not to view a lawyer's decisions in "the distorting effects of

6 hindsight." *Id*. at 689–90.

7      There can be no dispute that counsel's request that the court make no

8 comment on the absence of the administering charge was strategic.  Whether sound

9 or not is not the inquiry.  This Court may not "second-guess" counsel's decisions or

10 view them under the "fabled twenty-twenty vision of hindsight." *Edwards v.*

11 *Lamarque*, 475 F.3d 1121, 1127 (9th Cir. 2007); quoting *LaGrand v. Stewart*, 133

12 F.3d 1253, 1271 (9th Cir. 1998) (internal quotation marks omitted).  Ground one of

13 the petition should be denied.

14      **B. Ground Two:  Ineffective Assistance of Counsel.**

15      In ground two of his Petition, Machado appears to advance two claims

16 which he implies are intertwined:  (1) the trial court erred by refusing a jury

17 instruction on the spousal defense and by refusing to give the jury legal definitions

18 of "spouse" and "cohabitation"; and (2) the State was relieved of its burden of

19 proof where the court's reasonable doubt instruction permitted the State to argue

20 that the jurors could convict Machado if they were "firmly convinced" that the

21 sexual intercourse had been "without consent" or was the result of "immediate or

22 threatened use of force."  (Pet. at 7.)

23      Whether the trial court erred by refusing instructions on the spousal defense

24 or the definition of the common terms "spouse" and "cohabitation" involves an

25 interpretation of state law.  Federal habeas relief is not available for questions of

26 state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

27      A.R.S. § 13–1401(4) defines "spouse" as "a person who is legally married

28 and cohabiting."  Margaret was not Machado's "spouse" as it is defined in § 13–

1    1401, and, thus, Machado was properly denied the requested instruction.  Although

2    Machado and Margaret were legally married at the time of the sexual assault (R.T.

3    9/1/04, at 5), they were not cohabiting, a requirement under § 13–1401(4).  (*Id*. at

4    12, 14–15.)  They had been separated for three months at the time of the assault.

5    (*Id*.)  Margaret moved out of their shared home in September 2003 and had her

6    own apartment from that time through the time of the assault.  (R.T. 9/1/04, at 12–

7    15.)  She never stayed with Machado or had any kind of sexual relations with him

8    during the separation.  (*Id*. at 11–13, 17–19.)  In fact, the couple had a separation

9    agreement, signed by Machado, stating his acceptance of the fact that they were

10   separated and that he was not to ask for or attempt any physical contacts with

11   Margaret.  (*Id*. at 14–15.)  Although Margaret visited Machado's residence from

12   time to time, it was strictly to provide child care, or, as on the night in question, to

13   prepare for a nursing exam.  No interpretation of the facts presented at trial raises

14   an inference that Machado and Margaret were "cohabiting" at the time of the

15   sexual assault.

16        The issue turns on what the Arizona legislature intended by including the

17   word "cohabiting" in the statute.  *See State v. Henry*, 68 P.3d 455, 459, ¶ 14 (Ariz.

18   App. 2003) ("In construing a statute, effectuating legislative intent is our principal

19   aim.").  Arizona does not recognize common law marriage, and Arizona case law

20   specifically discussing cohabitation clearly indicates that the term has its

21   commonly understood meaning of "living together."  *See Medlin v. Medlin*, 981

22   P.2d 1087, 1090, ¶¶ 14–15 (1999) (using living together and cohabitation

23   interchangeably); *Muchesko v. Muchesko*, 955 P.2d 21, 26 (Ariz. App. 1997)

24   ("cohabiting" is one factor to look at in determining whether parties have

25   reconciled); *Van Dyke v. Steinle*, 902 P.2d 1372, 1380–83 (Ariz. App. 1995)

26   ("cohabitation" equated with sharing of residence).  Unless the legislature clearly

27   expresses its intent to give a term a special meaning, courts give words used in

28   statutes their plain and ordinary meaning.  *Riepe v. Riepe*, 91 P.3d 312, 315, ¶ 9

1   (Ariz. App. 2004).

2          Moreover, pursuant to the applicable Arizona statute, the terms "married"

3   and "cohabit" are clearly separate and not intended to be interpreted as

4   interchangeable.  A.R.S. § 13–1401(4).  Thus, in Arizona, the term "cohabiting"

5   has a common sense meaning apart from marriage and could not reasonably be

6   defined for a jury to include an inquiry into elements that make up a common law

7   marriage, as Machado implied on direct appeal.  For the spousal defense to apply

8   in Arizona, the couple has to be both legally married and also cohabiting.  *Id*.

9   Machado and Margaret resided in separate dwellings; they had a written agreement

10  to live separately and to have no physical contact.  The Arizona Court of Appeals

11  reasonably rejected Machado's argument.

12         Moreover, Machado did not present the trial court with any constitutional

13  claims among his reasons for requesting the instruction.  (Respondents' Exhibit C;

14  R.T. 9/8/04, at 159–73.)  Because he did not raise constitutional issues in the trial

15  court, the Arizona Court of Appeals correctly reviewed solely for fundamental

16  error.  (Petitioner's Exhibit B, at ¶ 15.)  Because the trial court did not err by

17  refusing to give the spousal defense jury instruction, Machado did not prove

18  fundamental error or resulting prejudice.

19         Machado's second contention (as Respondents understand it) seems to

20  challenge the trial court's definition of reasonable doubt.  The statement Machado

21  objects to appears to be the court's instruction, "If, based on your consideration of

22  the evidence, you are *firmly convinced* that the defendant is guilty of the crime

23  charged, you must find him guilty."  (R.T. 9/9/04, at 17; emphasis added.)  Later, in

24  closing argument, the prosecutor repeated the standard, saying:  "The standard of

25  proof in a criminal case is firmly convinced. . . .  You just have to be firmly

26  convinced that whatever he did was done without Margaret's consent . . . ."  (*Id.* at

27  51.)

28         Trial counsel did not render ineffective assistance by failing to object to this

1    instruction or to the argument thereon.  Machado did not object to the reasonable

2    doubt instruction at trial.   In fact, as the Arizona Court of Appeal found, he

3    requested the reasonable doubt instruction, and so he invited any error in that

4    instruction and was not entitled to appellate review.  (Respondents' Exhibit D, # 2;

5    Petitioner's Exhibit B, at ¶ 22.)   "The independent and adequate state ground

6    doctrine prohibits the federal courts from addressing the habeas corpus claims of

7    state prisoners when a state-law default prevented the state court from reaching the

8    merits of the federal claims."   *Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir.

9    1991).

10   Machado can overcome this default only if he shows cause for the default

11   and actual prejudice from the claimed constitutional violation, or that this Court's

12   failure to consider the claim will result in a miscarriage of justice. *Coleman v.*

13   *Thompson*, 501 U.S. 722, 749–50 (1991).  He fails to allege cause.  If cause is not

14   shown, this Court need not evaluate prejudice.  *Murray v. Carrier*, 477 U.S. 478,

15   488 (1986).

16   Even so, no prejudice can be shown here because the reasonable doubt

17   instruction given in his trial, mandated by *State v. Portillo*, 898 P.2d 970, 974

18   (Ariz. 1995), is not contrary to clearly established federal law.  In *Portillo*, the

19   Arizona Supreme Court fashioned an instruction to meet the due process standards

20   set forth in *In re Winship*, 397 U.S. 358, 364 (1970), *Cage v. Louisiana*, 498 U.S.

21   39, 41 (1990), and Justice Ginsburg's concurring opinion in *Victor v. Nebraska*,

22   511 U.S. 1, 25–26 (1994).  In short, the reasonable doubt instruction given below,

23   which contained the "firmly convinced" language, clearly passes constitutional

24   muster.  Thus, even if Machado could show cause for his default, he cannot show

25   prejudice.  Ground two of the Petition must be dismissed.

26

27

28

1  **VI.    CONCLUSION.**

2      Based on the foregoing authorities[2] and arguments, Respondents respectfully

3  request that the Petition for Writ of Habeas Corpus be denied and dismissed with

4  prejudice.

5      RESPECTFULLY SUBMITTED this 16TH day of September, 2009.

6                                      TERRY GODDARD
7                                      ATTORNEY GENERAL

8                                      s/JOSEPH L. PARKHURST
9                                      ASSISTANT ATTORNEY GENERAL
                                       CRIMINAL APPEALS/CAPITAL LITIGATION SECTION
10
11                                     ATTORNEYS FOR RESPONDENTS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
_____
27
[2] This is a test footnote.
28

1

2

Attorney for Petitioner

3

4    s/Joseph L. Parkhurst

5    *************

6    A copy of the foregoing was deposited for mailing
     this 16TH day of September, 2009, to:
7

8    Petitioner, Pro Se
     Kenneth S. Machado #189869
9    Asp-Cacf (#M70)
     P.O. Box 9600
10   Florence, Az 85232

11   s/Joseph L. Parkhurst

12

13

14   539830
15   PWHC_ans_Tuc.dot

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**LIST OF EXHIBITS**

2

3    Exhibit A.    Indictment

4    Exhibit B.    Memorandum Decision, 2 CA–CR 2008–0044–PR

5    Exhibit C.    Trial Memorandum on "Cohabitating"

6    Exhibit D.    Machado's Requested Jury Instructions

7    Exhibit E.    Reporter's Transcript ("R.T.") 9/1/04

8    Exhibit F.    R.T. 9/2/04

9    Exhibit G.    R.T. 9/3.04

10   Exhibit H.    R.T. 9/7/04

11   Exhibit I.    R.T. 9/8/04

12   Exhibit J.    R.T. 9/9/04

13   Exhibit K.    R.T. 9/10/04

14   Exhibit L.    R.T. 10/15/04

15

16

17

18

19

20

21

22

23

24

25

26

27

28